UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------

MELISSA E.E.,

Plaintiff, DECISION AND ORDER
1:25-CV-07346-GRJ

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
---------------------------------------------------

GARY R. JONES, United States Magistrate Judge:

In April of 2023, Plaintiff Melissa E.E.[1] applied for Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the application. Plaintiff, represented by Olinsky Law Group, Howard D. Olinsky, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 10).

This case was referred to the undersigned on August 27, 2026. Presently pending is Plaintiff's Motion for Judgment on the Pleadings pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

No. 14). For the following reasons, Plaintiff's motion is due to be granted, and this case is remanded for further proceedings.

## I. BACKGROUND

### *A. Administrative Proceedings*

Plaintiff applied for benefits on April 12, 2023, alleging disability beginning November 17, 2022. (T at 78).[2] Plaintiff's application was denied initially and on reconsideration. She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on October 28, 2024, before ALJ Laura Michalec Olszewski. (T at 36-76). Plaintiff appeared with an attorney and testified. (T at 43-63, 65-66). The ALJ also received testimony from Joseph M. Atkinson, a vocational expert. (T at 64-65, 67-73).

### *B. ALJ's Decision*

On December 17, 2024, the ALJ issued a decision denying the application for benefits. (T at 12-35). The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 12, 2023 (the date she applied for benefits). (T at 17).

The ALJ concluded that Plaintiff's asthma, chronic obstructive pulmonary disease (COPD), migraines, bilateral carpal tunnel syndrome,

[2] Citations to "T" refer to the administrative record transcript at Docket No. 13.

paresthesia of both hands, long-haul COVID, degenerative disc disease, cervical disc bulge and stenosis, cervical and lumbar radiculopathy, hiatal hernia, and chronic pain syndrome were severe impairments as defined under the Social Security Act. (T at 17).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 22).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 416.967 (a), with the following limitations: she can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; frequently stoop, kneel, crouch, and crawl; occasionally reach overhead, and frequently handle and finger. (T at 23). In addition, the ALJ found Plaintiff limited to no more than occasional concentrated exposure to atmospheric conditions such as dust, odors, fumes, gases, poor ventilation, and temperatures; and needed to avoid unprotected heights, operation of heavy machinery, and the operation of motor vehicles. (T at 23).

The ALJ concluded that Plaintiff could not perform her past relevant work as a department manager. (T at 29).

However, considering Plaintiff's age (35 on the application date), education (at least high school), work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 30).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between April 12, 2023 (the application date) and December 17, 2024 (the date of the ALJ's decision). (T at 31).

On July 15, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

*C. Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on September 4, 2025. (Docket No. 1). On February 24, 2026, Plaintiff filed a motion for judgment on the pleadings, supported by a brief-memorandum of law. (Docket No. 14, 15). The Commissioner interposed a brief in opposition to the motion and requested judgment on the pleadings, on April 29, 2026. (Docket No. 19). On May 13, 2026, Plaintiff submitted a reply brief in further support of her motion. (Docket No. 20).

## II. APPLICABLE LAW

*A. Standard of Review*

“It is not the function of a reviewing court to decide de novo whether a claimant was disabled.” *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court’s review is limited to “determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard.” *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). “Substantial evidence” is “more than a mere scintilla” and “means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

“In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.” *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

*B. Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without

> considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III. DISCUSSION

Plaintiff argues that the ALJ's consideration of the medical opinion evidence was flawed, which undermined her assessment of Plaintiff's ability to meet the demands of basic work activity. Plaintiff also contends that the ALJ failed to adequately develop the record.

*A. Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration updated its regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Plaintiff applied for benefits after that date, the revised regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2). The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)). The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, Dr. Konstantinos Tsoubris performed a consultative psychiatric evaluation in September of 2023. He diagnosed major depressive disorder (recurrent, mild), generalized anxiety disorder, post-traumatic stress disorder, and specific phobia. (T at 437). Dr. Tsoubris also recognized Plaintiff's medical diagnoses, including long-haul COVID. (T at 437).

Dr. Tsoubris assessed mild impairment in Plaintiff's ability to understand, remember, and apply simple directions and instructions; moderate limitation in understanding, remembering, and applying complex directions; no limitation with respect to using reason and judgment to make work-related decisions; marked impairment in social interaction; marked limitation in Plaintiff's ability to sustain concentration, perform at pace, and maintain an ordinary routine and regular attendance; and marked impairment with respect to regulating emotions. (T at 436).

The ALJ found Dr. Tsoubris's opinion unpersuasive. (T at 20). The ALJ assessed no more than mild impairment in Plaintiff's ability to meet the mental demands of basic work activity (T at 19-20); found that Plaintiff's mental impairments were non-severe (T at 21); and did not include any mental limitations into the RFC determination. (T at 23).

The Court finds that the ALJ's assessment cannot be sustained. In particular, the ALJ failed to properly address the impact of Plaintiff's Long COVID on her ability to meet the mental demands of basic work activity, including her ability to sustain concentration, perform at pace, and maintain an ordinary routine and regular attendance.

Policy guidance issued by the Social Security Administration recognizes "Long COVID" as a medically determinable impairment and

identifies anxiety, depression, and "'brain fog' (difficulty thinking or concentrating)") as its "most common symptoms." *See* EM-21032 REV 2, https://secure.ssa.gov/apps10/reference.nsf/links/03282024111904AM (last accessed September 10, 2026)).

Dr. Tsoubris noted Plaintiff's diagnosis of Long COVID and assessed marked limitation in her ability to sustain concentration, perform at pace, and maintain an ordinary routine and regular attendance. (T at 436-37).

Despite recognizing Plaintiff's Long COVID as a severe impairment (T at 17), the ALJ appears to have considered (and discounted) the restrictions identified by Dr. Tsoubris from a purely psychiatric perspective. In finding Dr. Tsoubris's opinion unpersuasive, the ALJ pointed to Plaintiff's treatment notes which contained "normal psychiatric findings" and found it significant that Plaintiff was "not being treated for mental health … taking medications [or] engaging in therapy." (T at 21).

It is not evident from the record that a person suffering from brain fog caused by Long COVID would benefit from mental health treatment, psychiatric medication, and/or therapy. *See Greene v. Berryhill*, No. 3:17-CV-01241 (JCH), 2018 WL 8646666, at *8 (D. Conn. Aug. 10, 2018)("Before drawing an inference, the ALJ must consider 'possible reasons [the claimant] may not comply with treatment or seek treatment

consistent with the degree of his or her complaints."); *see also Diaz v. Astrue*, No. 08cv5006 (JG), 2009 WL 2601316, at *5 (E.D.N.Y. Aug. 24, 2009)(finding characterization of treatment as "conservative" to be "problematic," because there was "no indication that some more intensive course of treatment should have been pursued if [claimant's] ailments were as severe as he alleged"); *see also Burgess v.* Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (ALJ may not impose his own "'notion[ ] that the severity of a … impairment directly correlates with the intrusiveness of the medical treatment ordered'")(quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)).

Moreover, the record, including Dr. Tsbouris's own examination findings, documents deficits in Plaintiff's attention and concentration. (T at 435, 749, 765, 788, 905). *See Lestingi v. Comm'r of Soc. Sec. Admin*., No. 1:24-CV-6025, 2025 WL 3484970, at *4 (E.D.N.Y. Dec. 4, 2025)(remanding for further proceedings based on evidence that claimant was "an obese, diabetic woman who suffers from long COVID and brain fog," which indicated that she had a "more modest RFC than the ALJ found"); *see also generally Stacey v. Comm'r of SSA*, 799 F. Appx. 7, 10 (2d Cir. 2020)(cautioning "ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions"); *Gough v. Saul*, 799 F. Appx.

12, 14 (2d Cir. 2020)("We fear that the ALJ cherry-picked evidence from the record to support his conclusion that Gough could work full time even though the record as a whole suggested greater dysfunction.").

The Commissioner points to the findings of the non-examining State Agency review consultants as supporting the ALJ's decision. Drs. Y. Sherer and Dr. E. Frances both concluded that Plaintiff's mental impairments were not severe as defined under the Social Security Act. (T at 80-82, 90-91).

This argument, however, repeats the ALJ's mistake in considering Plaintiff's mental limitations solely as related to her psychiatric diagnoses and failing to account for the relationship between Plaintiff's mental functioning deficits and Long COVID. Notably, neither of the State Agency consultants identified or addressed Long COVID as one of Plaintiff's impairments. (T at 81, 90).

Lastly, it is significant that the record does not include an assessment of Plaintiff's mental functioning from a treating provider and/or any opinion from a medical professional specifically addressing the interplay between Plaintiff's Long COVID symptoms and her ability to meet the mental demands of basic work activity.

Dr. Zoltan Fekete, a treating neurologist, completed a residual functional capacity questionnaire in October of 2024, in which he identified Plaintiff's poor concentration, problems with judgment, and difficulty solving problems as objective signs of impairment, but he declined to provide an assessment of Plaintiff's functioning. (T at 905-907).

Under these circumstances, it was error for the ALJ to discount Dr. Tsbouris's opinion and formulate an RFC that recognized *no* limitation whatever in Plaintiff's mental functioning without further developing the record by, for example, asking Dr. Tsbouris to clarify the basis for his opinion and/or seeking an additional assessment regarding the impact of Plaintiff's Long COVID on her mental functioning. *See Carrasquillo v. Comm'r of Soc. Sec.*, No. 23-CV-02323 (NRM), 2025 WL 3251043, at *12 (E.D.N.Y. Nov. 21, 2025)(duty to develop the record includes "an affirmative duty to recontact a medical expert if an ALJ makes an initial determination that a medical expert's opinions are vague or appear to be inconsistent with their examination notes"); *Shaw v. Kijakazi*, No. 20-CV-5123 (JLC), 2021 WL 3524101, at *12 (S.D.N.Y. Aug. 11, 2021)(citations omitted)(noting that an ALJ may not substitute "common-sense" for medical opinion evidence in a case that presents "complex medical findings"); *see also Thomas v. Saul*, No. 19-CV-6990 (MKV) (RWL), 2020 WL 5754672, at

*9 (S.D.N.Y. July 24, 2020)(duty to develop the record remains "even where the ALJ has access to treatment notes, test results, and other medical history"); *Vellone on behalf of Vellone v. Saul*, No. 20-CV-261 (RA), 2021 WL 2801138, at *2 (S.D.N.Y. July 6, 2021).

*B. Remand*

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

The Court finds a remand required for the reasons set forth above.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED and this case is remanded for further administrative proceedings consistent with this Decision and Order.

The Clerk is directed to enter final judgment in favor of Plaintiff and then close the file.

Dated: September 11, 2026

s/ Gary R. Jones
GARY R. JONES
United States Magistrate Judge